## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FEDERAL DEPOSIT INSURANCE
CORPORATION,

       Plaintiff,

vs.                               No. CIV 89-0237 JB/RLP

ALICE S. HARGER, a single woman,
ROCKY MOUNTAIN PLUMBING & HEATING,
a New Mexico Corporation, STEVEN H. MAZER,
Trustee, and SPRINGER CONSTRUCTION
COMPANY, INC.,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Plaintiff's Rule 70 Motion to Appoint

Special Master, filed June 30, 2010 (Doc. 20); (ii) Intervenor's Motion by 103B Limited Company

to Intervene, filed July 9, 2010 (Doc. 22); (iii) Intervenor's Motion for Relief from Order of April

27, 2009, filed July 9, 2010 (Doc. 23)("Motion for Relief"); (iv) Petition for Relief from from [sic]

Foreclosure Judgment of September 20, 1989, filed July 9, 2010 (Doc. 24); and (v) Motion to Stay

Enforcement of the Foreclosure Judgment, filed July 9, 2010 (Doc. 25).  The Court held a hearing

on August 31, 2010.  The primary issues are: (i) whether the Court should substitute the special

master the Honorable Judge Juan G. Burciaga, United States District Judge for the District Court

of New Mexico, appointed in his Stipulated and Default Judgment and Decree of Foreclosure, filed

September 20, 1989 (Doc. 11)("Stipulated Order"); (ii) whether the Court should allow 103B

Limited Company, LLC ("103B") to intervene in this case; (iii) whether the Court should vacate its

Memorandum Opinion and Order, filed April 27, 2009 (Doc. 18)("MOO"); (iv) whether the Court

should declare the Stipulated Order to be extinguished and forever unenforceable; and (v) whether the Court should stay enforcement of its Stipulated Order. Because adversarial process has sharpened the Court's understanding of the circumstances surrounding this case, the Court vacates its MOO. Because Bazen is a state-court loser who seeks to have the Court declare void and undermine a state court judgment, the Court does not have subject-matter jurisdiction over Bazen's claims. Consequently, because the Court does not have jurisdiction to entertain Bazen's claims, the Court denies 103B's request to intervene and therefore his other motions.

## FACTUAL BACKGROUND

This subject of this action is real property located in Valencia County, New Mexico ("Property"):

> A certain tract of land in Valencia County, New Mexico, comprising Tract 103b2a1b, Tract 103b2b2 and a major portion of Tracts 103b2a2a and 101a1a2, as such tracts are shown on Map 73 of the surveys of the Middle Rio Grande Conservancy District, being within the San Clemente Grant and within Section 28, Township 7 North, Range 2 East of the New Mexico Principal Meridian and being more particularly described as follows:
>
> BEGINNING at the southeast corner of the tract, whence A.T.& S.F. Ry. Mile Post Marker No. 923 bears S 20 deg. 12' E, 248.3 feet distant and running as follows:
> Thence N 10 deg. 06' E, 75.00 feet to a point;
> Thence N 44 deg. 52' W, 123.92 feet to a point;
> Thence N 10 deg. 06' E, 180 feet to the northeast corner;
> Thence N 75 deg. 30' W, 496.10 feet to the northwest corner;
> Thence S 10 deg. 06' W, 300.00 feet to the southwest corner;
> Thence S 75 deg. 40' E, 596.10 feet to the southeast corner and point of beginning.

Complaint for Collection and Foreclosure ¶¶ 7, 29, at 3, 8-9, filed February 21, 1989 (Doc. 1).

On or about April 8, 1981, a warranty Deed ("Deed") was executed conveying the Property to Defendant Alice Harger, pursuant to which Harger agreed and assumed to pay the remaining obligations due under a promissory note in the principal amount of $22,500.00 ("Note A").

Complaint ¶ 15, at 5.  As a result of the Deed, Harger assumed the obligations under a mortgage ("Mortgage A").  Complaint ¶ 21, at 7.  Note A and Mortgage A were subsequently assigned to the FDIC on November 29, 1988, and the FDIC is now the lawful owner of Note A and Mortgage A. See Complaint ¶ 14, at 5.

On or about January 11, 1984, Rocky Mountain Plumbing and Heating executed and delivered to First City National Bank, Albuquerque, s/k/a Moncor Bank, Albuquerque, N.A. s/k/a New Mexico National Bank ("Moncor Bank") a Promissory Note in the principal amount of $140,300.00 ("Note B").  Complaint ¶ 22, at 7.  On or about February 15, 1985, Rocky Mountain executed and delivered to Moncor Bank, a Promissory Note in the principal amount of $25,325.00 ("Note C").  Complaint ¶ 23, at 7.  On or about January 11, 1984, as security for payment of Rocky Mountain's debt under Notes B and C, Harger executed and delivered a mortgage ("Mortgage B") to Moncor Bank.  Complaint ¶ 27, at 8.

Moncor Bank was a national banking association before July 17, 1986.  See Complaint ¶ 2, at 2.  On or about July 17, 1986, the Office of the Comptroller of the Currency declared Moncor Bank insolvent, ordered Moncor Bank closed, took possession of its assets and affairs, and tendered them to Plaintiff Federal Deposit Insurance Corporation (the "FDIC"), and the FDIC accepted appointment as Receiver of Moncor Bank.  See Complaint ¶ 3, at 2.  The FDIC in its corporate capacity purchased from the FDIC as Receiver of Moncor Bank certain assets of Moncor Bank, including Mortgage B.  See Complaint ¶ 4, at 2.

On or about August 3, 1987, Harger filed a petition for bankruptcy relief.  See Complaint ¶ 8, at 3.  In its Complaint, the FDIC asserted that Defendant Steven H. Mazer, the bankruptcy trustee (the "Bankruptcy Trustee"), had acquired whatever interest Harger had in the Property and asserted

that the Bankruptcy Trustee's interest in the property should be foreclosed.  Complaint ¶ 34, at 10.

The amounts due under Note B and C were liquidated in a prior Valencia County state foreclosure action involving a separate parcel of real property, and a second mortgage on the property involved in the state foreclosure action secured Notes B and C.  See Complaint ¶ 24, at 7.  The FDIC was granted a deficiency judgment ("State Deficiency Judgment") on Note B and C in the total amount of $121,603.52, plus interest at the rate of $40.47 per day from February 15, 1988 until paid.  Complaint ¶ 25, at 7-8.  The FDIC succeeded to Moncor Bank's interest in Mortgage B, which secures the balance due under the State Deficiency Judgment -- the liquidated amount due under Notes B and C.  See Complaint ¶ 28, at 8.  Mortgages A and B give FDIC first and second mortgages in the Property.  Defendant Springer Construction Company, Inc. had or may claim to have some right, title, or interest in or to the Property, which is junior and subordinate to FDIC's interest.  See Complaint ¶ 31, at 9-10.

## PROCEDURAL BACKGROUND

The FDIC filed its Complaint on February 21, 1989.  Harger and Rocky Mountain failed to plead or otherwise defend against the FDIC's action, and on September 14, 1989, the Clerk of the Court filed its Entry of Default against them.  See Doc. 10.  On September 20, 1989, the Judge Burciaga entered a Stipulated and Default Judgment and Decree of Foreclosure.  See Doc. 11 ("Stipulated Order").

In the Stipulated Order, Judge Burciaga stated that "[a]ll of the allegations contained in the Complaint are true and correct in all respects, except as modified herein."  Stipulated Order at 2.  Judge Burciaga also found that the Bankruptcy Trustee "has disclaimed any interest in the subject

property." Stipulated Order at 2. The Stipulated Order stated that the FDIC and Springer Construction were entitled to a judgment of foreclosure on their mortgages, and that, "in the event there is any deficiency remaining after the sale of the property, the FDIC and/or Springer shall be entitled to pursue a deficiency against Rocky Mountain, and against Harger subject to the jurisdiction of the Bankruptcy Court." Stipulated Order at 2-3. Judge Burciaga entered default judgment against Harger and Rocky Mountain for their failure "to answer or otherwise plead to the Complaint of the FDIC." Stipulated Order at 3. Judge Burciaga held that "[a]ll of the Harger's and Rocky Mountain's rights in the real property described below are hereby terminated, and the property will be sold to satisfy the indebtedness due the FDIC awarded pursuant to [the Stipulated Order] and the indebtedness due Springer pursuant to [the Stipulated Order]." Stipulated Order at 4. Judge Burciaga ordered that the FDIC and Springer Construction's Liens were "foreclosed and the real property hereinafter described shall be and hereby is ordered sold at public auction according to law and practice in this Court." Stipulated Order at 5. Judge Burciaga also ordered that "[t]he foreclosure shall be pursuant to law and to the provisions of the FDIC's Mortgages, subject to a right of redemption for a period of one month and subject to the application of the proceeds of sale as set forth herein." Stipulated Order at 6. Judge Burciaga appointed Julie Gregory as special master to give notice and sell the property, and instructed that "[t]he FDIC and Springer shall be entitled to become purchasers at the foreclosure sale." Stipulated Order at 6. The Court ordered that "the Purchaser shall be vested with paramount title to the property and all rights attendant thereto, free and clear of any rights, title or interests of Harger and Rocky Mountain subject only to the right of redemption for a period of one year." Stipulated Order at 7. Judge Burciaga did not state who held the title to the Property pending the foreclosure sale or what was to happen if the sale did not

occur.

After Judge Burciaga entered the Stipulated Order, it was determined that petroleum-based chemicals from underground fuel storage tanks on Bazen's adjoining property had contaminated the Property. See Motion to Re-Open Case and Substitute Plaintiff ¶ 2, at 1, filed September 9, 2008 (Doc. 13)("Motion to Substitute"). Because of the contamination, the Village of Los Lunas declared the property a nuisance. See Motion to Substitute ¶ 3, at 1. Under the direction of the New Mexico Environment Department, the property was remediated in April 2004, making it able to be reasonably foreclosed. See Motion to Substitute ¶¶ 4-5, at 1-2. No foreclosure sale ever occurred.

In 1995, before purchasing a quitclaim deed to the Property, 103B became aware of a lis pendens in the public records of Valencia County referencing this case and became aware of the record in this case, including the Stipulated Order. See Motion for Relief ¶ 3, at 3. On January 27, 1995, 103B's counsel inquired of the FDIC its position with respect to the Stipulated Order, and 103B was informed that the FDIC would likely disclaim or otherwise not assert any claim against the Property based on the Stipulated Order, or otherwise.

On December 17, 2004, Bazen's counsel, Laurence P. Guggino, communicated with the FDIC in negotiations regarding an assignment of the judgment in the Stipulated Order. See Letter from Mr. Guggino to Walter Ashby (dated December 17, 2004), filed July 9, 2010 (Doc. 23-5)("December 17, 2004 Letter"). Mr. Guggino wrote in response to a prior telephone conversation, and he agreed that the FDIC could only assign Bazen its interest in the Stipulated Order, because "the FDIC does not currently have title to the property." December 17, 2004 Letter at 1. Mr. Guggino contested the FDIC's apparent request that Bazen increase his offer for the Property, stating that, "though the FDIC may be assigning their judgment rights to him, if an agreement is

consummated, there may be some doubt as to his ability to enforce the FDIC's judgment and actually sell this property in a foreclosure sale and obtain title."  December 17, 2004 Letter at 1.  Mr. Guggino also noted that further clean up of the Property was required.  See id.

On January 10, 2005, the FDIC wrote to Bazen, stating that it would accept Bazen's $15,000.00 offer for the FDIC's judgment right.  See Letter from Walter Ashby to Laurence P Guggino (dated January 10, 2005), filed July 9, 2010 (Doc. 23-6)("January 10, 2005 Letter").  The FDIC wrote: "To reiterate the FDIC's opinion that its judgment has expired and is unenforceable, as FDIC's Counsel, Edward Macleod, and I stated to you in our December 9th telephone conversation." January 10, 2005 Letter at 1.  The FDIC also wrote: "Once [Bazen] ha[d] tendered a cashier's check for $15,000, the FDIC w[ould] provide a fully executed assignment of its judgment." January 10, 2005 Letter at 1.

Approximately three months later, on April 5, 2005, Mr. Guggino responded to the FDIC. See Letter from Laurence Guggino to Walter Ashby (dated April 5, 2005), filed July 9, 2010 (Doc. 23-7)("April 5, 2005 Letter").  Mr. Guggino enclosed a $15,000.00 check and an Assignment of Judgment from the FDIC to Bazen.  He wrote: "I would appreciate it if you would please forward the Assignment of Judgment to Mr. McLeod for his review."  April 5, 2005 Letter at 1.  Bazen represents that the FDIC deposited his check.

On June 24, 2005, 103B obtained a quitclaim deed for the Property from Harger.  See Quitclaim Deed (dated June 24, 2005), filed July 9, 2010 (Doc. 23-1).  The conveyance was "without warranty covenants," and was "subject to any and all liens, encumbrances and unpaid property taxes that may be associated with the above described property and without any warranty of title or representation whatsoever on the part of the Grantor as the nature and extent of Grantor's

interest, if any, in the above-described premises." Quitclaim Deed at 1.  After obtaining title to the property, 103B learned from Bazen in an oral communication about Bazen's contention that he is the FDIC's assignee.

On November 7, 2006, 103B filed a quiet title action in the Valencia County District Court naming, among others, the FDIC, Bazen, and Springer Construction as defendants.  See 103B Limited Co. v. FDIC, D1314 CV 06 1126, Suit to Quiet Title (D. Ct. N.M. Nov. 7, 2006), filed July 23, 2010 (Doc. 28-1).  Springer Construction, through its successors, disclaimed all interest in the Property.  See 103B Limited Co. v. FDIC, D1314 CV 06 1126, Disclaimer of Interest (D. Ct. N.M. Feb. 21, 2007), filed July 9, 2010 (Doc. 23-4).  After service of process, the FDIC defaulted, and on December 15, 2006, the state court entered a default judgment, finding that the FDIC had abandoned the Stipulated Order and extinguishing the FDIC's interest.  See 103B Limited Co. v. FDIC, D1314 CV 06 1126, Judgment by Default Quieting Plaintiff's Title Against Defendant Federal Deposit Insurance Corporation (D. Ct. N.M. Dec. 15, 2006), filed July 9, 2010 (Doc. 23-3)("Default Judgment").  The Default Judgment stated in relevant part:

> Plaintiff owns in fee simple real estate in Valencia County, New Mexico, described as follows (herein called the "land"), free and clear of all adverse liens, right, title and other claims of the defendant FDIC . . . .

> FDIC has remained silent as to any interest in the land for over eighteen years, and its claims, if any, are barred by various statutes of limitations and barred under the doctrines of equitable estoppel, promissory estoppel, laches, abandonment, relinquishment, acquiescence, and other equitable principles.

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that plaintiffs fee simple title to the land is forever quieted, and the defendant FDIC is forever barred and estopped from making or asserting any adverse lien, right, title or other claim whatsoever, to the land.

Default Judgment ¶¶ 3, 4, at 2-3.

-8-

On January 22, 2007, Bazen filed an answer in the state court proceeding.  See 103B Limited Co. v. FDIC, D1314 CV 06 1126, Defendant Hans Bazen's Answer to Complaint to Quiet Title and Cross-claim Against Federal Deposit Insurance Corporation (D. Ct. N.M. Jan. 22, 2007), filed July 9, 2010 (Doc. 23-8)("State Court Answer").  Bazen filed crossclaims against the FDIC based on the assignment of the FDIC's interest in the Property.  Bazen stated that the FDIC "refused and failed to execute the agreed upon assignment of judgment."  State Court Answer ¶ 6, at 2.  Bazen stated that, "[d]ue to the nature of the contract, the Cross-Plaintiff has an inadequate remedy at law."  State Court Answer ¶ 8, at 2.  Bazen prayed that the state court

> enter Judgment in favor of Cross-Plaintiff declaring that the Cross-Defendant has assigned its interest in the Stipulated Judgment of Foreclosure to Cross-Plaintiff, that the Cross-Plaintiff be permitted to sell the real property that is the subject matter of this action to the highest bidder at a foreclosure, and for such other further relief as the Court deems just and proper in the premises.

State Court Answer 3.

On March 10, 2008, the state court entered a Disposition Order for Lack of Prosecution.  See Doc. 34-1.  The state court dismissed without prejudice all pending claims.  The state court ordered "that all writs, judgments, final orders or stipulations previously filed herein shall remain in full force and effect unless otherwise ordered."  Disposition Order for Lack of Prosecution at 1.

On September 9, 2008, Bazen filed his Motion to Re-Open Case and Substitute Plaintiff.  See Doc. 13.  Bazen moved the Court to re-open this case, which was terminated in 1989, and substitute him as the Plaintiff.  Bazen stated that he was a real party in interest, because the FDIC "negotiated the check" for $15,000.00 but refused to execute the Assignment of Judgment.  Motion to Substitute at 2.  Bazen stated that "the FDIC ha[d] attempted to repudiate the agreement to assign the foreclosure decree, and Hans Bazen has insisted at all times that the FDIC comply with the terms

of the agreement to assign the foreclosure decree."  Motion to Substitute at 2.

Despite knowing of the state quiet title proceeding, knowing of the state court Default Judgment against the FDIC, knowing of his counterclaims against the FDIC in the state court proceeding, and knowing of 103B's adverse claim to the Harger property, Bazen did not inform the Court of these issues.  Bazen told the Court that "the FDIC has attempted to repudiate the agreement to assign the foreclosure decree."  Motion to Substitute ¶ 9, at 2.

At the hearing on Bazen's Motion to Substitute, only Guggino appeared.  At the hearing, the Court noted that it was leaving the conference call ongoing in case Robert J. Muehlenweg, FDIC's counsel, wished to call in to the hearing and that the Court had contacted the Bankruptcy Trustee about the hearing, but he would not be appearing.  See Transcript of Hearing at 2:4-13 (taken April 20, 2009)(Court)("Tr.").[1]  The Court noted that mail sent to William N. Henderson, Springer Construction's counsel -- the only other party or attorney with an address on file with the Court -- had been returned.  See Tr. at 2:13-16.

Mr. Guggino indicated that there was some resistance from the FDIC regarding the foreclosure, but represented it was unclear what the precise problem was.  Mr. Guggino acknowledged that the FDIC "will not negotiate" the Assignment of Judgment, but asserted that the FDIC had cashed his client's check and that Bazen owned the FDIC's interest in the judgment. See Tr. at 6:11-7:3 (Court, Guggino).  Mr. Guggino stated that he knew how to contact the FDIC and the Defendants in the case.  See Tr. at 8:4-8 (Guggino).  Mr. Guggino informed the Court that he had been negotiating with the parties, but was unable to get resolution and could think of no other

---

[1] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain different page and/or line numbers.

way to proceed than by seeking to reopen the case.  See id. at 9:7-17 (Guggino).  Mr. Guggino stated

that his intent to was to have a special master appointed and go forward with the sale as outlined in

the Stipulated Order.  See Tr. at 10:16-22 (Court & Guggino).  Mr. Guggino acknowledged that, if

his client had received an interest in the judgment in a more normal fashion, he would have

attempted to proceed to collect in the original action with writs from the Court.  See Tr. at 11:25-

12:21.

On April 27, 2010, the Court substituted Bazen as the Plaintiff.  Concerned about the lack

of adversary process, and about what it might not know, the Court proceeded cautiously.  In the

Court's MOO, it allowed that it would revisit its decision if subsequent adversary process produced

information that undermined the Court's decision to substitute Bazen for the FDIC as the Plaintiff

in this case.  See MOO at 5.  Recognizing that the Court did not enjoy the benefit for an adversary

opposing Bazen's Motion to Substitute, it allowed:

> If a party with standing to object wishes to contest whether Bazen has the interest in
> the judgment he asserts or wishes to contest the foreclosure, then the Court will be
> able to deal with those objections when they are made.  If such objections are made,
> the adversarial process may also help sharpen the issues raised here. . . . Because of
> the nature of the proceedings, the Court will be amenable to changing its decision
> today if the issues raised in an adversarial manner point to a different outcome.

MOO at 5.  The Court held that it need not reopen the case to substitute Bazen and allow him to

enforce the Stipulated Order, and denied Bazen's request to reopen the case.  See MOO at 5.  The

Court also required Bazen to give notice to the parties in the case about its proposed action and

about the Court's opinion.  See MOO at 1, 3, 5.

Bazen asks the Court to make a decision on the Stipulated Order's continued viability.  See

Transcript of Hearing at 6:5-7 (taken August 31, 2010)(Bazen).  Bazen moves the Court to substitute

the special master appointed in its Stipulated Order.  103B seeks to intervene in this case to defend

its interest in the Property against Bazen's claims.  103B moves the Court for relief from its MOO

and the Stipulated Order.  103B also moves the Court to stay enforcement of the Stipulated Order.

At the August 31, 2010 hearing, the Court inquired about the consequences of vacating its

MOO.  103B asserted that the parties could continue in state court and that the state court could offer

complete relief.  Bazen responded that the state court could not exercise jurisdiction over the

Stipulated Order, because the Court has personal and subject-matter jurisdiction over the Property.

Both parties submitted letters to the Court in support of their positions.  See Letter from Anthony

Williams to the Court (dated September 10, 2010), filed September 10, 2010 (Doc. 38); Letter from

Laurence Guggino to the Court (dated September 10, 2010), filed September 10, 2010 (Doc. 39).

## ANALYSIS

The adversary process has provided the Court additional information about the circumstances

of this case which call into question the Court's decision to substitute Bazen in as Plaintiff.

Accordingly, the Court finds it is appropriate to vacate its MOO.

Bazen asks the Court to find that the state court Default Judgment is void and to make a

decision on the continued viability of the Stipulated Order.  He also asks the Court to enforce the

FDIC's rights under the Stipulated Order.  The FDIC's rights under the Stipulated Order are

inextricably intertwined with the state court Default Judgment, which held that the FDIC's rights

are "forever quieted," and that "its claims, if any, are barred by various statutes of limitations and

barred under the doctrines of equitable estoppel, promissory estoppel, laches, abandonment,

relinquishment, acquiescence, and other equitable principles."  Default Judgment ¶ 4, at 3.  Because

the Court does not have jurisdiction to review the state court Default Judgment, the Court does not

have subject-matter jurisdiction to entertain Bazen's request that it declare void the state court decision.

103B seeks to intervene to defend against Bazen's claims.  Because the Court does not subject-matter jurisdiction over Bazen claims, it denies 103B's request to intervene.  The Court therefore vacates its MOO and denies all of Bazen's and 103B's Motions.

## I.    THE COURT VACATES ITS MOO.

A number of considerations weigh in favor of the Court vacating its MOO.  The Court was unaware that the state court quiet title proceeding regarding the Property when it filed its MOO.  The Court was also unaware that the state court had entered Default Judgment declaring the FDIC's rights time barred.  Recognizing that the Court did not enjoy the benefit for an adversary opposing Bazen's Motion to Substitute, it allowed:

> If a party with standing to object wishes to contest whether Bazen has the interest in the judgment he asserts or wishes to contest the foreclosure, then the Court will be able to deal with those objections when they are made.  If such objections are made, the adversarial process may also help sharpen the issues raised here. . . .  Because of the nature of the proceedings, the Court will be amenable to changing its decision today if the issues raised in an adversarial manner point to a different outcome.

MOO at 5.  Now that 103B, a party with an interest in the Property, has come forward with new information about the circumstances surrounding this case, the Court concludes that the information now before it has sharpened the issues, and counsels in favor of vacating the Court's MOO.

### A.    BAZEN DID NOT INFORM THE COURT ABOUT THE STATE COURT QUIET TITLE PROCEEDING.

The state court entered Default Judgment against the FDIC's interest in the Property over a year before Bazen filed his Motion to Substitute in this case.  On December 15, 2006, the state court entered a Default Judgment finding that the FDIC had abandoned the Stipulated Order and

-13-

extinguishing the FDIC's interest.[2]  <u>See</u> Default Judgment at 3.  The Default Judgment stated in

relevant part:

> Plaintiff owns in fee simple real estate in Valencia County, New Mexico, described as follows (herein called the "land"), free and clear of all adverse liens, right, title and other claims of the defendant FDIC . . . .
>
> FDIC has remained silent as to any interest in the land for over eighteen years, and its claims, if any, are barred by various statutes of limitations and barred under the doctrines of equitable estoppel, promissory estoppel, laches, abandonment, relinquishment, acquiescence, and other equitable principles.

-----

[2] Congress has waived sovereign immunity and consented to suits against the FDIC in state court.  <u>See</u> 12 U.S.C. § 1819(a)("[T]he Corporation shall become a body corporate and as such shall have power . . . . . [t]o sue and be sued, and complain and defend, by and through its own attorneys, in any court of law or equity, State or Federal.");  <u>FDIC v. Meyer</u>, 510 U.S. 471, 480-83 (1994). Additionally, under 28 U.S.C. § 2410, state courts may quiet tile to properties on which the United States has a lien:

> (a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter--
>
> > (1) to quiet title to,
> >
> > (2) to foreclose a mortgage or other lien upon,
> >
> > (3) to partition,
> >
> > (4) to condemn, or
> >
> > (5) of interpleader or in the nature of interpleader with respect to,
>
> real or personal property on which the United States has or claims a mortgage or other lien.

28 U.S.C. § 2410.  <u>See</u> <u>United States v. Ward</u>, 985 F.2d at 502-03 (stating that under Oklahoma law: "Only after foreclosure proceedings does the mortgagee obtain title and the right to possession of the mortgaged property.").  Moreover, "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights."  28 U.S.C. § 2409a.

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that plaintiffs fee simple title to the land is forever quieted, and the defendant FDIC is forever barred and estopped from making or asserting any adverse lien, right, title or other claim whatsoever, to the land.

Default Judgment ¶¶ 3, 4, at 2-3.

Bazen was a party to the state court proceeding, and filed an answer and crossclaims against the FDIC based on the FDIC's "refus[al] and fail[ure] to execute the agreed upon assignment of judgment." State Court Answer ¶ 6, at 2. Bazen stated that, "[d]ue to the nature of the contract, the Cross-Plaintiff has an inadequate remedy at law." State Court Answer ¶ 8, at 2. Bazen prayed that the state court

> enter Judgment in favor of Cross-Plaintiff declaring that the Cross-Defendant has assigned its interest in the Stipulated Judgment of Foreclosure to Cross-Plaintiff, that the Cross-Plaintiff be permitted to sell the real property that is the subject matter of this action to the highest bidder at a foreclosure, and for such other further relief as the Court deems just and proper in the premises.

State Court Answer 3.

Despite knowing of and participating in the state court case, Bazen made no mention of the quiet title proceeding in his Motion to Substitute or at the hearing on his motion. Bazen filed his Motion to Substitute on September 9, 2008, more than one year after the state court entered default against the FDIC and after Bazen filed his State Court Answer. Had the Court been aware of this information, it likely would not have entertained Bazen's contention that he is the successor in interest to the FDIC's interest in the Stipulated Order. As discussed in section II, Bazen impermissibly seeks to void and collaterally attack the state court Default Judgment. Were the Court aware of Bazen's intent, it likely would have denied his Motion to Substitute.

-15-

**B.      BAZEN FAILED TO NOTIFY THE PARTIES AND INTERESTED PARTIES OF HIS MOTION IN ACCORD WITH RULE 25(C) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND THE COURT'S MOO.**

While Bazen's failure to disclose the state court proceeding and the Default Judgment may provide sufficient reason to vacate the MOO, there are other issues that also support the Court's decision to vacate.  First, Bazen did not notify the parties and 103B about his efforts in this case, contrary to rule 25(c) and the Court's MOO.  Rule 25(c) governs the substitution of parties after a litigant's interest is transferred.  Under rule 25, a claimed successor in interest can proceed by motion to be substituted in an action.  Rule 25(c) requires service of process of the motion to substitute on both parties in accordance with rule 5 and nonparties as in accordance with 4.  Bazen did not notify the Defendants of his Motion to Substitute.  Despite knowing of 103B's interest in the Property, he did not give 103B notice.  He served notice to the outside counsel of record for the FDIC, who filed an appearance twenty years ago, without attempting to obtain or to use updated contact information for providing service directly to the FDIC.

In the Court's MOO, it "require[d] Bazen to give notice to the parties in the case about its proposed action and about the Court's opinion."  MOO at 1.  See id. at 3 ("The Court will, however, require that Bazen give notice to the other parties in this case to the extent that it is reasonably possible, so that they may raise any objections they may have.").  The Court entered its MOO on April 27, 2009.  Bazen appears not to have notified the parties or interested parties until at least July 2010.  See Motion for Relief ¶¶ 43-45, at 9.  Bazen knew how to contact the parties and interested parties in this case.  He was in contact with them in the state court quiet title proceeding.  Nonetheless, Bazen did not comply rule 25's requirements and the Court's MOO, and he failed to give notice to the Defendants and 103B.

### C.     THE FDIC DOES NOT APPEAR TO HAVE ASSIGNED ITS JUDGMENT RIGHTS IN THE STIPULATED ORDER TO BAZEN.

The Court substituted Bazen as Plaintiff on the assumption that the FDIC had assigned its interest in the Stipulated Order to Bazen.  It does not appear that the FDIC has yet assigned its rights in the Stipulated Order to Bazen.  Bazen may have a claim against the FDIC for accepting his check, but not yet an assignment.

In the January 10, 2005 Letter, the FDIC conditioned future delivery of the assignment upon receipt of a check, following which "the FDIC w[ould] provide a fully executed assignment of its judgment" on a form that the FDIC would prepare.  January 10, 2005 Letter at 1.  The FDIC also stated its position that "its judgment has expired and is unenforceable."  January 10, 2005 Letter at 1.  Approximately three months later, after the offer may have expired, on April 8, 2005, Bazen transmitted the cashier's check allegedly "in accordance with [the parties'] agreement."  April 8, 2005 Letter.  Rather than awaiting the FDIC's fully executed assignment, Bazen provided his own. The Assignment that Bazen provided, however, did not include the FDIC's disclaimer about the viability of the judgment in the Stipulated Order.  Bazen's April 8, 2005 Letter also contemplates further review of Bazen's proposal, stating: "I would appreciate it if you would please forward the Assignment of Judgment to Mr. McLeod for his review."  April 5, 2005 Letter at 1.  Thus, the April 5, 2005 Letter appears to be a request for further negotiations and not a consummation of the earlier agreement.  In his state court crossclaims, Bazen stated that the FDIC "has refused and failed to execute the agreed upon assignment of judgment."  State Court Answer ¶ 6, at 2.  His state court crossclaim undermines his contention before this Court that the FDIC executed the assignment and then attempted to repudiate the agreement.  See Motion to Substitute ¶ 9, at 2.

In sum, the Court finds that, informed by adversary proceedings, it is appropriate to vacate

its MOO.  Bazen failed to inform the Court of the state court quiet title proceedings regarding the Property.  In particular, Bazen failed to reveal that the state court entered Default Judgment against the FDIC's interest in the property as time barred.  Bazen also failed to give notice of his efforts in this case to the Defendants and interested parties.  The merits of Bazen's assignment claim lack a sound basis in the law or in the facts of this case.  The Court, therefore, vacates its MOO.

## II.   THE COURT DOES NOT HAVE JURISDICTION TO REVIEW THE STATE COURT'S DEFAULT JUDGMENT, WHICH BAZEN SEEKS TO COLLATERALLY ATTACK.

Bazen's seeks to collaterally attack the state court's Default Judgment against the FDIC, which Bazen contends is "void."  Response to Motion by 103b Limited Company to Intervene at 5, filed July 23, 2010 (Doc. 27).  The Court does not have jurisdiction to review the state court decision under the Rooker-Feldman doctrine.[3]

> The Rooker-Feldman doctrine prohibits federal suits that amount to appeals of state-court judgments. . . . [T]he . . . doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).]   Appellate review -- the type of judicial action barred by Rooker-Feldman -- consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law. When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.  In this latter situation the

---

[3] The Rooker-Feldman doctrine derives from two Supreme Court of the United States cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  The Tenth Circuit has recognized that the "Rooker-Feldman doctrine prohibits federal suits that amount to appeals of state-court judgments."  Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1139, 1142-43 (10th Cir. 2006)(citations omitted).

conflict between the two judgments is to be resolved under preclusion doctrine, not Rooker-Feldman.

Bolden v. City of Topeka, Kan., 441 F.3d at 1142-43.[4]  "Generally, the Rooker-Feldman doctrine precludes lower federal courts 'from effectively exercising appellate jurisdiction over claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment.'"  PJ ex rel. Jensen v. Wagner, 603 F.3d 1182 (10th Cir. 2010)(quoting Mo's Express, LLC v. Sopkin, 441 F.3d 1229, 1233 (10th Cir. 2006)).

Bazen attacks the state court Default Judgment against the FDIC.  The state court held that "defendant FDIC is forever barred and estopped from making or asserting any adverse lien, right, title or other claim whatsoever, to the land."  Default Judgment at 3.  Bazen contends:

> 103B decided to file a quiet title action and collaterally attack the foreclosure judgement.  A successor in interest to a party that was properly served and participated in a foreclosure action can not collaterally attack the foreclosure judgment entered against its predecessor by filing a quiet title action.  See Matlock v. Somerford, 64 N.M. 347, 328 P.2d 600 (1958).  Therefore, any judgment that 103B obtained against the FDIC in its state court proceeding is void.

_____

[4] The Rooker-Feldman doctrine is related to abstention under Younger v. Harris, 401 U.S. 37 (1971).

> The Rooker-Feldman doctrine . . . precludes inferior federal courts from reviewing the final decisions of state tribunals.  See Crutchfield v. Countrywide Home Loans, 389 F.3d 1144, 1147 (10th Cir.2004) [overruled in part on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005)].  In the alternative, if the state-court judgment [challenged in federal court] is not final, the Younger abstention doctrine prevents the federal district court from interfering in an ongoing state proceeding.  Weitzel v. Div. of Occupational & Prof'l Licensing of the Dep't of Commerce of Utah, 240 F.3d 871, 875 (10th Cir.2001).  Either way, the federal courts lack jurisdiction.

Hennelly v. Flor de Maria Oliva, 237 F. App'x 318, 319 (10th Cir.2007)(modifications in original).  Because the state court dismissed the action for lack of prosecution before Bazen filed his Motion to Substitute, the state court proceeding was not ongoing.  Consequently, the Rooker-Feldman doctrine, and not Younger abstention, applies.

Response to Motion by 103b Limited Company to Intervene at 4-5.  This Court does not have

jurisdiction to review the state court Default Judgment against the FDIC, or to declare it void.  See

Bolden v. City of Topeka, 441 F.3d at 1139 ("The Rooker-Feldman doctrine prohibits federal suits

that amount to appeals of state-court judgments.").[5]  It appears that, after the state court entered its

Default Judgment against rights Bazen sought to enforce, Bazen turned to the federal court to avoid

the state court judgment.  The Rooker-Feldman doctrine prevents federal courts from assuming

jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S.

at 284.

Moreover, in addition to contending that the state court judgment is void, Bazen seeks to

have the Court enforce the rights the state court has said are expired, seeking, "in essence, to

overturn a [judgment] from the [New Mexico state court].  This amounts . . . to an appeal from, or

collateral attack on, the state court's judgment, and it is not allowed under the Rooker-Feldman

_____

[5] The Court does not and cannot review the state court judgment.  If the Court had jurisdiction to review the state court, it would note that the state court judgment did not collaterally attack the Stipulated Order, because it did not address the merits of the Stipulated Order.  Rather, the state court held that the FDIC's claim was stale, because it "has remained silent as to any interest in the land for over eighteen years, and its claims, if any, are barred by various statutes of limitations and barred under the doctrines of equitable estoppel, promissory estoppel, laches, abandonment, relinquishment, acquiescence, and other equitable principles."  Default Judgment ¶ 4, at 3.  Bazen contends that the state court's Default Judgment is contrary to Matlock v. Somerford, which Bazen asserts stands for the proposition that "[a] successor in interest to a party that was properly served and participated in a foreclosure action can not collaterally attack the foreclosure judgment entered against its predecessor by filing a quiet title action."  Response to Motion by 103B Limited Company to Intervene at 4-5.  The collateral attack at issue in Matlock v. Somerford was whether foreclosure judgment was invalid because the court lacked jurisdiction over the parties.  Here, the state court did not find the Stipulated Order was invalid; it found the Stipulated Order had expired.

-20-

doctrine." Erlandson v. Northglenn Mun. Court, 528 F.3d 785, 789 (10th Cir. 2008)(quoting Meadows v. Okla. City Mun. Court, 247 F. App'x 116 (10th Cir. 2007)). Because Bazen asks the Court to make a decision on the continued viability of the Stipulated Order, Bazen's request is inextricably intertwined with the state court's Default Judgment. Cf. Orcutt v. Libel, 381 F. App'x 866, 868 (10th Cir. 2010)("Therefore, these claims are 'inextricably intertwined' with those foreclosure decisions because they 'assert injuries based on the [state court decisions] and, for [him] to prevail, would require the district court to review and reject those [decisions].'" (quoting Mann v. Boatright, 477 F.3d 1140, 1147 (10th Cir. 2007)(alterations in original)). The Court therefore does not have subject-matter jurisdiction to entertain Bazen's requests. See Erlandson v. Northglenn Mun. Court, 528 F.3d at 789 ("Rooker-Feldman is a jurisdictional limit on federal district and appellate courts, and it prohibits us from reviewing state court decisions." (citations omitted)).

While this case was filed before the state court quiet title proceeding, and the foreclosure sale never occurred, the case sat quiet for almost twenty years before Bazen moved to reopen the cases and substitute himself as Plaintiff. The Rooker-Feldman doctrine prevents a federal court from allowing a state-court loser to reopen a case to file a motion to challenge a state court decision. In Ajiwoju v. Housing Authority of Kansas City, 173 F.3d 863 (10th Cir. 1999)(table), the Tenth Circuit affirmed a district court's "denial of a motion to reopen a voluntarily dismissed action, which had been tried to completion in state court." 173 F.3d 863, at *1. The plaintiff brought a claims in federal court, and then "voluntarily dismissed the case without prejudice soon after filing." 173 F.3d 863, at *1. The plaintiff then brought a suit in Kansas state court, in which the state court granted summary judgment against all of his claims.

> [The plaintiff] then filed a motion with the federal district court to reopen his federal
> case and set aside the state court case for irregularity and lack of subject matter

jurisdiction.  The district court overruled the motion on two grounds.  First, any action by the federal court would require the federal court "to review and 'correct' the action of the District Court of Wyandotte County and the Kansas Court of Appeals . . . .  [S]uch action would be problematical under the <u>Rooker-Feldman</u> doctrine, see <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 414-16 (1923) . . . ."  Second, [the plaintiff] "has not demonstrated that he is entitled to relief under Rule 60." <u>Id.</u>

173 F.3d 863, at *1.  The Tenth Circuit affirmed the district court holding "for substantially the same reasons advanced by the district court."  173 F.3d 863, at *1.  While the Tenth Circuit decided <u>Ajiwoju v. Housing Authority of Kansas City</u> before the Supreme Court decided <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, the Tenth Circuit's decision is not inconsistent with <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp</u>.  In that case, the Supreme Court held that, "[w]hen there is parallel state and federal litigation, <u>Rooker-Feldman</u> is not triggered simply by the entry of judgment in state court."  544 U.S. at 292.  The Supreme Court stated:

> ExxonMobil plainly has not repaired to federal court to undo the Delaware judgment in its favor.  Rather, it appears ExxonMobil filed suit in Federal District Court (only two weeks after SABIC filed in Delaware and well before any judgment in state court) to protect itself in the event it lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue.  <u>Rooker-Feldman</u> did not prevent the District Court from exercising jurisdiction when ExxonMobil filed the federal action, and it did not emerge to vanquish jurisdiction after ExxonMobil prevailed in the Delaware courts.

544 U.S. at 293-94 (citations to the record and footnote omitted).  Unlike ExxonMobil, Bazen was already a "state-court loser" when he sought to substitute into this case.  544 U.S. at 284.  The state court entered Default Judgment on December 15, 2006.  Bazen sought to substitute into and reopen this case on September 9, 2008.  After losing in state court, Bazen sought to use the federal forum to circumvent the state court Default Judgment.  When 103B made the Court aware of the state court proceeding, Bazen then argued that the state court judgment is "void."  Response to Motion by 103b Limited Company to Intervene at 5. The Court does not have jurisdiction to take up Bazen's request

that it review the state court decision, find it void, and pronounce that FDIC's rights under the Stipulated Order are not time barred.

It does not save Bazen that he attempts to substitute into a twenty year old case instead of initiating a new federal action to enforce the Stipulated Order.  In Golden v. Helen Sigman & Associates, Ltd., 611 F.3d 356 (7th Cir. 2010), the United States Court of Appeals for the Seventh Circuit held that the Rooker-Feldman doctrine barred its jurisdiction to review a state court judgment entered while the district court abstained from hearing the case.  The Seventh Circuit stated:

> In our case, the Rooker-Feldman doctrine bars us from reviewing the question whether Sigman violated Golden's rights when she acted as Dale's advocate.  See Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 . . . (1923); District of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 486 (1983).  The doctrine prevents a party "complaining of an injury caused by [a] state-court judgment" from seeking redress in a lower federal court.  See Exxon Mobil Corp. v. Saudi Indus. Corp., 544 U.S. 280, 291-92 (2005).  Although we recognize that the Supreme Court has warned against a broad reading of this doctrine, see Lance v. Dennis, 546 U.S. 459 . . . (2006), our case does not present the risk of expansion that was present in Lance.  There, the Court disapproved the use of Rooker-Feldman "where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding."  546 U.S. at 464 . . . .  In our case, the parties are identical, and the only injury that Golden alleges that he has suffered from Sigman's supposedly biased advocacy is the alienation of Dale's affections and a reduction in his custodial rights.  These harms flow directly from the fruit of Sigman's efforts: state-court custody orders favorable to Rosenbaum.  Golden has not alleged a procedural harm that is separate and independent from the state court's custody determination.  See, e.g., Nesses v. Shepard, 68 F.3d 1003, 1005 (7th Cir. 1995) (explaining that plaintiff's claim that his state trial was tainted by politics was distinct from a claim that the state-court judgment was erroneous).  As Golden's allegations cannot be separated from the state court's judgment, Rooker-Feldman acts as a jurisdictional bar.  We add for the sake of completeness that even if some aspect of these orders escapes Rooker-Feldman, after Lance, we would reject Golden's claims on the merits.  The federal court would be obliged to give full faith and credit to the state-court judgment, see 28 U.S.C. § 1738, and we see no reason why Golden should be entitled to reopen matters that the state court actually resolved or could have resolved.

611 F.3d at 361-62.

The Court therefore concludes that it does not have jurisdiction to entertain Bazen's contention that the state court judgment is void or that the FDIC's rights under the Stipulated Order are not time barred.  If the state court Default Judgment is wrong, "that d[oes] not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. at 285 (quoting Rooker v. Fidelity Trust Co., 263 U.S. at 415).  If Bazen believes the state court's judgment is in error, his recourse is to timely ask the state court to reconsider its judgment or to timely appeal the judgment to the state court of appeals.  The vehicle for relief from the state court decision is not to reopen a twenty-year-old federal case and to ask the Court to declare void a New Mexico state court decision based on New Mexico law.  The Court therefore has no subject-matter jurisdiction to hear Bazen's claims.

Because the Court does not have subject-matter jurisdiction to review the state court Default Judgment, the Court cannot entertain Bazen's request that it decide the viability of the FDIC's rights under the Stipulated Order.  Because the Court has no jurisdiction to entertain Bazen's claims, there is no need to allow 103B to intervene to defend against Bazen's request.  The Court therefore denies 103B's motions.

**IT IS ORDERED** that: (i) the Court vacates its Memorandum Opinion and Order, filed April 27, 2009 (Doc. 18); (ii) the Court denies Hans Bazen's Rule 70 Motion to Appoint Special Master, filed June 30, 2010 (Doc. 20); (iii) the Court denies 103B Limited Company, LLC's Motion by 103B Limited Company to Intervene, filed July 9, 2010 (Doc. 22); (iv) the Court denies 103B's Motion for Relief from Order of April 27, 2009, filed July 9, 2010 (Doc. 23); (v) the Court denies 103B's Petition for Relief from from [sic] Foreclosure Judgment of September 20, 1989, filed July

9, 2010 (Doc. 24); and (vi) the Court denies 103B's Motion to Stay Enforcement of the Foreclosure

Judgment, filed July 9, 2010 (Doc. 25).

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Robert J. Muehlenweg
Rammelkamp Muehlenweg & Cordova, P.A.
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Alice S. Harger
Address Unknown

     *Defendant pro se*

Rocky Mountain Plumbing & Heating Company, Inc.
Address Unknown

     *Defendant pro se*

Steve H. Mazer
Bill Gordon & Associates
Albuquerque, New Mexico

     *Attorneys for Chapter 7 Trustee Steve H. Mazer*

William N. Henderson
The Henderson Law Firm
Albuquerque, New Mexico

     *Attorneys for Defendant Springer Construction Company, Inc.*

Laurence P. Guggino, Jr.
Griego, Guggino & Associates
Los Lunas, New Mexico

     *Attorneys for Hans Bazen*

Anthony J. Williams
Albuquerque, New Mexico

*Attorney for 103B Limited Company, LLC*